UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| THOMAS BRENNAN AND )<br>KATHLEEN BRENNAN, )<br>        )<br>    PLAINTIFFS    )<br>        )<br>v.       )<br>        )<br>CASCO BAY ISLAND TRANSIT )<br>DISTRICT *d/b/a Casco Bay*  )<br>*Lines*, ET AL.,    )<br>        )<br>    DEFENDANTS    ) | CIVIL NO. 07-138-P-H |

**DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

Casco Bay Island Transit District provides commercial ferry service to various Casco Bay islands and the mainland through Casco Bay Lines. The issue on this motion to dismiss is whether the District is an arm of the state entitled to Eleventh Amendment immunity. I hold that it is not and **DENY** the motion to dismiss.

FACTS AND PROCEDURAL HISTORY

According to the Amended Complaint, Casco Bay Lines employed the two plaintiffs as deckhands on the ferry MAQUOIT II. Pl.'s First Am. Compl. ¶ 7 (Docket Item 3). One plaintiff was injured during docking operations and seeks damages. See id. ¶¶ 12-26. Her brother witnessed the accident and claims damages for emotional distress. Id. ¶ 29. They both sued Casco Bay Island

Transit District and Casco Bay Lines[1] under the Jones Act, general maritime law, and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The defendants have moved to dismiss, claiming the State's sovereign immunity under the Eleventh Amendment.  See Defs.' Mot. to Dismiss 1 (Docket Item 8).

## ANALYSIS

Eleventh Amendment immunity "applies only to the states themselves and entities that are determined to be arms of a state."  Pastrana-Torres v. Corporacion de Puerto Rico Para La Difusion Publica, 460 F.3d 124, 126 (1st Cir. 2006).  Casco Bay Island Transit District claims that it is an arm of the State of Maine.  The First Circuit "has developed a two-part test to resolve arm-of-the-state questions." Id. (citing Fresenius Med. Care Cardiovascular Res. Ctr. Inc. v. Puerto Rico and the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56 (1st Cir. 2003)). "The first part of the test asks whether the state has structured the entity to share its Eleventh Amendment immunity." Id.  To answer that question, a court must consult the state laws that define the character of the entity in question.  Id. Control by the State is "an important aspect of this inquiry."  Id.  If the answer is inconclusive, "the second part of the test focuses on the risk that money damages will be paid from the state's treasury if the entity is found liable." Id.  That analysis "centers on whether the state has obligated itself to pay the entity's debts."  Id.  The inquiry looks at both "what is said by state law on the topic and

---

[1] I will call them collectively "Casco Bay Island Transit District" or the "District."

what in fact has happened." Id. at 128 (quoting Fresenius, 322 F.3d at 72). I proceed to apply the two-part test.

### *(1) Is Casco Bay Island Transit District structured to share the State's Eleventh Amendment Immunity?*

The Maine Legislature created the Casco Bay Island Transit District by emergency legislation in 1981[2] when the previous provider of Casco Bay ferry service went into bankruptcy. The legislation declared the new District a "body politic and corporate" and a "quasi-municipal corporation." Private & Special Law 1981, ch. 22, §§ 1, 11; Casco Bay Island Transit Dist. v. Pub. Util. Comm'n, 528 A.2d 448, 449 (Me. 1987) ("a quasi-municipal entity").[3] It reserved very little, if any, State control over the District. Instead, ten of its twelve Directors are elected by the voters of the Casco Bay islands, one is appointed by the City Council of the City of Portland (itself not an arm of the State) and one is appointed by Maine's Commissioner of Transportation. Id. § 2. The directors must "adopt bylaws and rules for the conduct of the affairs of the district." Id. § 4. They must file a certificate of organization with the Secretary of State, id. § 6, just as private corporations must file articles of incorporation. See 13-C M.R.S.A. §§ 201-203. The legislation gives the directors wide powers, Private & Special Law 1981, ch.

---

[2] 1981 Private & Special Law ch. 22 (LD 1351 enacted April 16, 1981).
[3] The significance of the term probably has to do with preserving immunity under the Maine Tort Claims Act from state law claims. See 14 M.R.S.A. § 8102(3). The defendants' legal memorandum and the affidavit of the Operations Manager state that the legislation made it a "quasi municipal, non-profit corporation." Defs.' Mot. to Dismiss 6; Aff. ¶ 2. Although the District is granted tax-exemption, I do not find the phrase "non-profit" in the legislation.

In any event, it is indisputable that municipal corporations are not arms of the State and do not share a State's sovereign immunity. Jinks v. Richland County, 538 U.S. 456, 466 (2003); cf. Mueller v. Penobscot Valley Hosp., 538 A.2d 294, 299 n.6 (Me. 1988) ("The fact that [the defendant] is owned and operated by . . . a quasi-municipal operation[] [sic] does not provide [it] with the sovereign immunity possessed by the State of Maine.").

3

22, §§ 7, 10, including the power to "agree to be bound by all applicable provisions of federal, state and municipal statutes and regulations as the case may be." Id. § 7. The legislation specifies that the Public Utilities Commission ("PUC") has authority to regulate the District "under all the restraint, responsibilities and privileges as have applied to [the bankrupt] Casco Bay Lines." Id. § 12. The Maine PUC regulates many private entities. See 35-A M.R.S.A. § 102 (defining various utilities subject to PUC regulation). The legislation gives the District power to "sue and be sued." Private & Special Law 1981, ch. 22, § 1. Nowhere in the legislation is there any specification of state control over the District. In other words, the District is autonomous.

The only factors at work in the opposite direction are the legislative statements that the District "will be performing essential governmental functions," id. § 9, and that the District's purpose is to provide "waterborne transportation . . . for public purposes in the interest of public health, safety, comfort and convenience of the inhabitants of the islands comprising the district." Id. § 1. In addition, the District points out that in 1987 and 1991 the Legislature adopted provisions in the Public Utilities statute protecting the District from certain types of competition, 35-A M.R.S.A. §§ 5101, 5101-C; instructing the Commission that the Legislature intended cross-subsidization of rates among users so as to maintain affordable rates and "the financial viability of the district and the viability of the island communities served by the district," § 5101-A(1); directing the Commission to "attempt to minimize the potential need for governmental operating subsidies for the operations maintained by the district," § 5101-A(2);

4

and prohibiting the Commission from allowing other entities to operate in Casco Bay if the decision were "likely to have a significant adverse impact on the rates . . ., the capability of the district to sell or repay bonds, the short-term or long-term financial viability of the district, or the ability of the district to retain a reasonable level of cross-subsidization . . . ." § 5101-C.

The factors in the preceding paragraph demonstrate that the Legislature was concerned that ferry service be maintained in Casco Bay, and it took all possible steps to ensure that the District could provide that service on its own. But still the District remains independent; the State does not control it, and control is the important issue in this first part of the test. I conclude that an examination of Maine law does not show that Maine has structured the District "to share its Eleventh Amendment immunity." Pastrana-Torres, 460 F.3d at 126.[4]

### (2) Has the State obligated itself to pay Casco Bay Island Transit District's debts?

#### (a) State law on the topic.

Nowhere does the legislation creating the District obligate the State to pay the District's debts. To the contrary, the effort seems to have been to make the District financially independent. In giving the District the power to sell bonds, the legislation declares that "[a]ll such bonds, notes and evidences of indebtedness so

---

[4] In fact, less than two months after creating the District, the Legislature adopted 23 M.R.S.A. § 4403, declaring that when Casco Bay ferry service "can no longer feasibly be provided by *private* operators at rates established by the Public Utilities Commission," the Department of Transportation shall provide services by either contracting with private operators or acquiring and operating the facilities. 1981 ch. 456 § A, 88 (LD 1576 enacted June 2, 1981) (emphasis added). If the Legislature considered the District private, it is difficult to see how it considered the District an arm of the State.

5

issued by the district shall be legal obligations of the district . . . ." Private & Special Law 1981, ch. 22, § 11. The bonds may be secured by mortgages or security interests in the District's assets. Id. The District is authorized to charge fares to meet all expenses and to maintain any surplus to retire indebtedness "or for other proper purpose." Id. § 8. The defendants concede that "the enabling act may not specifically make the State liable to pay" judgments against the District. Defs.' Reply 8 (Docket Item 10). Nevertheless, they argue that the State is financially at risk because it "insures [the District] through the Department of Administrative and Financial Services, Risk Management Division." Id. What the statutes tell us is that the State has established a reserve fund, a "state-administered fund." 5 M.R.S.A. § 1737(1). Its purpose is to indemnify in instances where there is a deductible clause in purchased insurance or in cases of self-insurance. Id. The Director of the Bureau of General Services may provide insurance advice or services to Casco Bay Island Transit District, but the same assistance applies to family foster homes, respite care providers, and public schools, none of which possess the State's Eleventh Amendment immunity. § 1737(4). Moreover, any liability is limited to the reserve fund itself; there is "no recourse against the General Fund, the assets of the State or the commissioner, the director or any other State employee." § 1737(8). At most, then, what State law says on this topic is that the State has undertaken only a limited funding obligation. Under Pastrana-Torres, that is insufficient. See 460 F.3d at 128.

**(b)     What in fact has happened.**

With their motion to dismiss, the defendants make a number of factual assertions through their Operations Manager's affidavit. The plaintiffs object and argue that they require discovery to test the assertions. The defendants have the burden of proof on the issue. Pastrana-Torres, 460 F.3d at 128. Since I conclude that even if the assertions are correct, Eleventh Amendment immunity is not established, there is no need to await discovery.

The defendants say that while a "majority of the CBITD's revenue derives from passenger fares[, a] portion of the CBITD's budget is derived from the State. The amount that CBITD receives from the state varies from year to year." Aff. ¶ 5. "[W]hen passenger fares are insufficient to meet expenses, the CBITD has utilized State funds to meet the shortfall." Id. ¶ 8. "The State of Maine financially subsidizes the CBITD by maintaining the wharves and terminals of the outlying Casco Bay Islands at no cost to the CBITD." Id. ¶ 10. So far as insurance is concerned, the defendants state in their Reply Brief (not in an affidavit) that the State pays premiums for commercial insurance policies such as marine polices for boats and watercraft, or arranges a combination of commercial insurance and self-insurance. Defs.' Reply 8-9.

Nothing in these factual assertions suggests that the State has undertaken to pay the District's debts or that money damages awarded in this lawsuit would come out of the State treasury. See Fresenius, 322 F.3d at 75 ("In the end, [the defendant's] argument is simply that a judgment would deplete its operating funds, that the Commonwealth might choose to rescue it, and that this would

indirectly deplete the state treasury.  We rejected this very argument in <u>Metcalf & Eddy[, Inc. v. Puerto Rico Aqueduct and Sewer Authority</u>, 991 F.2d 935, 941 (1st Cir. 1993)], and we do so here."). Considering "what in fact has happened," I conclude that the defendants have failed to meet their burden of proof to show that the State has obligated itself to pay the District's debts or any judgment that might be awarded in this case.

As a result, applying the two-part test of <u>Pastrana-Torres</u>, I conclude that the defendants have failed to establish Eleventh Amendment immunity.  The motion to dismiss is **DENIED**.

**SO ORDERED.**

**DATED THIS 20TH DAY OF MARCH, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**